# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CRITERION BROCK, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-1877 |
| | § | |
| ABELARDO AGUIRRE, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Before the court are plaintiff's requests for a temporary restraining order and a preliminary injunction incorporated into the second amended complaint (Dkt. 16), and plaintiff's motion for expedited discovery (Dkt. 27). After review of the relevant pleadings, and the applicable law, the motions are DENIED.

## BACKGROUND

Plaintiff Criterion Brock, Inc. ("Criterion Brock") is a company that sells carpet to "the multi-family flooring industry." Dkt. 16 ¶ 1. Defendants Abelardo Aguirre ("Aguirre"), Patricia Miller ("Miller"), and John Ellis ("Ellis") are former account executives with Criterion Brock who each left Criterion Brock and accepted similar positions with defendant Redi-Carpet, Inc. ("Redi-Carpet"). *Id.* Criterion Brock has filed a second amended complaint along with an application for temporary and permanent injunctive relief asserting claims of breach of contract against defendants Aguirre, Miller, and Ellis alleging that they violated contractual covenants not to compete. *Id.* at 19. Criterion Brock also asserts claims for tortious interference with contractual and potential business relations and civil conspiracy against all named defendants. Id. at 21-22.

The crux of plaintiff's complaint is that "Redi-Carpet hired Aguirre, Miller, and Ellis in the first quarter of 2011, and promptly put them to work soliciting the very same customers with whom they had dealings during their last year of employment at Criterion Brock." *Id*. ¶ 2. This is alleged to be in contravention of the agreements Aguirre, Miller, and Ellis signed with Criterion Brock that they would not "directly or indirectly solicit or interfere with, or endeavor to entice away from Criterion Brock . . . any of its . . . customers for a period of one year following the termination of employment . . . ." Dkt. 16-2 at 2-16. Criterion Brock does not, however, seek to enforce the covenants specifically as written. Instead, Criterion Brock pleads that the covenants not to compete should be reformed so that the bar against soliciting "any" Criterion Brock customer for one year should actually prohibit defendants Aguirre, Miller, and Ellis from:

> Directly or indirectly soliciting or interfering with, or endeavor[ing] to entice away from Criterion Brock, or its successors, any of its customers *with whom they had personal dealings during th[eir] last year of employment at Criterion Brock* for a period of one year following their employment with Criterion Brock.

Dkt. 16 ¶ 28 (emphasis added). Preliminary injunctive relief is requested in the nature of an order enforcing this provision, with the proposed reformation, and also preventing Aguirre, Miller, and Ellis from disclosing Criterion Brock's confidential information, and directing them to return any and all "data, documents, electronic media or any kind, and technical information" they may have retained when they left Criterion Brock. Dkt. 16 at 23-24.

Criterion Brock alleges that it provided to Aguirre, Miller, and Ellis confidential information including "customers' names and addresses, price levels and other pricing information," business strategies and market initiatives, "methods of operation, product needs, product designs, [and] market strategies . . .." Dkt. 16 ¶18. More specifically, "Criterion Brock maintains a computer database called 'RFMS,' that contains customer information on pricing, yardages of carpeting the

customer has purchased from Criterion Brock, their management company, notes related to the customer, and other customer related information that is not publicly available." *Id.*

Criterion Brock also makes specific allegations of potential violations of the covenants that it believes have already occurred, and that prompted this lawsuit. Defendant Aguirre allegedly solicited two former Criterion Brock customers he had contact with during his last year of employment, JAW Equity LLC and Coopers Mill Apartments, in March, 2011. Dkt. 16 ¶ 32. Redi Carpet is alleged to have admitted that bids were made by Aguirre on its behalf to these two entities. *Id.* Miller is alleged to have solicited JAW Equity LLC and Brookmore Hollow Apartments after she left Criterion Brock. *Id.* at ¶ 34. On April 27, 2011, Criterion Brock alleges that it learned Aguirre had solicited business from Rubicon Apartments, a client Aguirre "dealt with extensively" during his final year of employment at Criterion Brock. *Id.* at ¶ 38. There is no allegation that Aguirre, Miller, or Ellis have disclosed any of Criterion Brock's confidential information, but it is alleged that Criterion Brock may "possibly lose its confidential information" to Redi Carpet. *Id.* at ¶ 42.

Defendants Aguirre, Miller, and Ellis have responded to the complaint and the requests for temporary and preliminary injunctive relief, and deny that they were provided any confidential information by Criterion Brock, or that they have employed any such information in making contacts with former Criterion Brock clients. Dkt. 29. Instead, Aguirre, Miller, and Ellis argue that they already possessed the knowledge of and relationships with clients when they began working for Criterion Brock, and that this knowledge was a result of their long experience selling carpeting to clients who own and operate apartment complexes. *Id.* Defendants also argue that the information Criterion Brock identifies as "confidential" is actually information readily available to competitors, and is often available from the potential clients themselves as apartment management companies

3

often seek competitive bids from several vendors, i.e., that one vendor's bid will be provided to other vendors to solicit competing bids. *Id.* Thus, defendants assert that no "confidential" information was actually provided to them that could serve as a basis for an enforceable covenant not to compete under Texas law. *Id.*[1] Defendants also argue that preliminary injunctive relief is not appropriate because, even if the covenants (when reformed as suggested) are enforceable, damages may be readily ascertained in this case by tracking any sales of carpeting to Criterion Brock clients by defendants Aguirre, Miller, and Ellis. *Id.*

## LEGAL STANDARD

A party seeking a temporary restraining order or other injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure has the burden to demonstrate each of four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir.2010); *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999). Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Thus, injunctive relief

---

[1] The parties agree that, in order for the covenants not to compete to be enforceable under Texas law, Criterion Brock must have both promised to provide, and then must actually have provided, confidential information to Aguirre, Miller, and Ellis during their employment. Texas law in this respect will discussed in more detail below.

should only be granted where the movant has "clearly carried the burden of persuasion." *Bluefield Water Ass'n*, 577 F.3d at 252-53; *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

At this stage of the litigation, the court can resolve plaintiff's requests for preliminary injunctive relief without addressing the enforceability of the covenants not to compete because plaintiff has not satisfied the second requirement for a preliminary injunction–that it will suffer irreparable harm. Irreparable harm requires a showing that: (1) the harm to plaintiff is imminent; (2) the injury would be irreparable; and (3) that plaintiff has no other adequate legal remedy. See *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). It must be remembered that "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). The Fifth Circuit has also noted that preliminary injunctions may be denied without a hearing, despite a request for a hearing by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be pointless. *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 341 (5th Cir. 1984).

## ANALYSIS

**I.    Enforceable covenants not to compete.**

Although the court need not address the likelihood of success on the merits because the issue of preliminary injunctive relief is being decided on the irreparable harm prong, a discussion of the legal standards for an enforceable covenant not to compete is helpful in framing the damages issue. Agreements not to compete are enforced in Texas if they comply with the provisions of the Texas Covenants Not to Compete Act ("Act"). The Act requires that a covenant not to compete be ancillary to or part of an "otherwise enforceable agreement" at the time the covenant is made. TEX. BUS. & COM. CODE ANN. § 15.50(a) (West Supp.2009). Here, Aguirre, Miller, and Ellis were at-will

5

employees of Criterion Brock. Generally, an at-will employment relationship alone is not an "otherwise enforceable agreement" as contemplated by the Act. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644-45 n. 6 (Tex. 1994) (at-will employment agreement is unenforceable at the time it is made and cannot support a covenant not to compete). However, an at-will employment relationship in conjunction with the provision of confidential information to the employee can give rise to an enforceable covenant not to compete. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 648-51 (Tex. 2006). In this case, Criterion Brock has alleged that it agreed to provide, and did provide, confidential information to Aguirre, Miller and Ellis. Criterion Brock has, therefore, pleaded that the covenants were ancillary to otherwise enforceable agreements.[2]

---

[2] Proof of enforceable agreements will be problematic in this case. In *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), the Supreme Court of Texas addressed a similar situation and found that there was no "confidential information" worthy of protection. "Specifically, Wackenhut contends that during his employ, DeSantis learned the identity of Wackenhut's customers, their special needs and requirements, and Wackenhut's pricing policies, cost factors and bidding strategies." *Id*. at 684. This is quite similar to the allegations made by Criterion Brock in this case. Dkt. 6 ¶18. While the court can presume that the covenants are enforceable for purposes of ruling on the requests for preliminary relief, the *DeSantis* court's rejection of a similar covenant is instructive:

> Again, while confidential information may be protected by an agreement not to compete, Wackenhut has failed to show that it needed such protection in this case. Wackenhut failed to show that its customers could not readily be identified by someone outside its employ, that such knowledge carried some competitive advantage, or that its customers' needs could not be ascertained simply by inquiry addressed to those customers themselves. Also, Wackenhut failed to show that its pricing policies and bidding strategies were uniquely developed, or that information about its prices and bids could not, again, be obtained from the customers themselves. There is no evidence that DeSantis ever took advantage of any knowledge he had of Wackenhut's cost factors in trying to outbid Wackenhut or woo away its customers. Wackenhut simply has not demonstrated a need to protect any confidential information by limiting DeSantis' right to compete.

793 S.W. 2d at 684. Indeed, like *DeSantis*, defendants argue that Criterion Brock did not have confidential information to protect that would justify the restriction requested.

6

A covenant not to compete must also meet the reasonableness standards of the Act. *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex.App.-Houston [14th Dist.] 1996, writ denied). The restriction must be reasonable, not imposing a greater restraint than is necessary to protect the goodwill or other business interest of the employer. TEX. BUS. & COM.CODE ANN. § 15.50(a). A restraint is unnecessary if it is broader than what is required to protect the legitimate interests of the employer. *DeSantis*, 793 S.W.2d at 682. Texas courts have found that a restrictive covenant is "overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment." *Stroman*, 923 S.W.2d at 85. Indeed, in this case, Criterion Brock essentially concedes that the covenants as written are unenforceable absent reformation consistent with *Stroman* to reflect a restriction involving only those clients with whom Aguirre, Miller, and Ellis dealt during the last year of their employment with Criterion Brock.

## II.     Irreparable harm.

Criterion Brock argues that a continued breach of a non-compete agreement by a highly trained employee can constitute *prima facie* proof of injury sufficient to warrant injunctive relief, and cites to *TransPerfect Translations, Inc. v. Leslie*, 594 F.Supp.2d 742 (S.D. Tex. 2009) (Ellison, J.). Dkt. 16-1 ¶ 42. In that case, the plaintiff sought an injunction against a former employee who it believed was using confidential information he obtained while working for plaintiff to solicit business for a new employer. Importantly, the court noted that "[l]ikely economic injuries may support a finding of irreparable harm especially if the losses are *difficult to quantify*." at 757 (emphasis added). A review of the opinion also reveals that it did not involve mere "poaching" of a client list as is alleged in this case. Rather, the former employee's intimate knowledge of TransPerfect's "e-Learning business strategies" was also at issue. *Id.* The court then specifically held that "it is difficult to know how many former TransPerfect clients Leslie might be able to

7

solicit" thereby making monetary damages both difficult to quantify, and likely an inadequate remedy. *Id.*

This court has had occasion to distinguish the facts in *TransPerfect* in the context of denying preliminary injunctive relief in a non-compete case, and does so again in this case. In *M-I, LLC v. Stelly*, 2009 WL 2355498 (S.D. Tex. July 30, 2009), a former employee had begun working for a competitor, and alleged that it lost, and would continue to lose, specific contracts due to the violation of a covenant not to compete. *Id.* *6. As is the case here, the analysis focused on the adequacy of monetary damages as a legal remedy. *Id.* Plaintiff M-I, LLC identified several jobs it believed it had lost due to the alleged breach of the covenant not to compete. *Id.* The court concluded that the plaintiff was, therefore, able to "track revenue" it had lost due to the alleged violation of the covenant not to compete by its former employee, and was therefore "capable of calculating any economic damage it has [suffered] and will suffer . . .." at *6. Therefore, no irreparable harm had been established and preliminary injunctive relief was denied. *Id.* *Transperfect* was distinguished on its facts because *Transperfect* involved a situation where damages would be difficult to quantify, but "M-I is monitoring its losses to Wellbore; it will not be difficult for the fact finder to calculate damages." *Id.* fn.3. The same result applies here because this case is much more analogous to *M-I* than it is to *TransPerfect*.

Accepting as true all of the facts alleged in the complaint, and granting Criterion Brock the further assumptions that its requested reformation of the agreements will be permitted, and that the agreements as reformed will be found enforceable, the fact finder will be asked to determine whether defendants solicited business from clients they had contact with as representatives of Criterion Brock during their last year of employment, and whether plaintiff suffered damage from those solicitations. In fact, the second amended complaint contains specific allegations of attempted solicitations of

8

Criterion Brock clients by defendants. Dkt. 16 at ¶¶ 32, 34, 38. Therefore, as was the case in *M-I*, there is evidence that Criterion Brock is already able to "track" the damages it has suffered and will suffer, and this is prior to any discovery being conducted. Discovery in this case may disclose further information that will assist the fact-finder in assessing damages (should it reach that issue). The pleadings in this case make it apparent that it will not be difficult to identify clients Aguirre, Miller, and Ellis worked with during their last year at Criterion Brock, nor will it be difficult to determine if they solicited those clients as employees of Redi-Carpet and to determine the damages suffered by Criterion Brock due to any "poaching" of clients that may be proven. In short, monetary damages will not be difficult to calculate in this case, nor will those damages be an inadequate judicial remedy. This is not a case where the extraordinary remedy of preliminary injunctive relief is warranted.

### III.   Expedited discovery.

Criterion Brock's motion for expedited discovery is premised solely on the need to prepare for a hearing on preliminary injunctive relief. Dkt. 27. Since no hearing is required to rule on the requests for preliminary injunctive relief, the motion will be denied.

## CONCLUSION

After consideration of the requests for a temporary restraining order and a preliminary injunction contained in the second amended complaint (Dkt. 16), and plaintiff's motion for expedited discovery (Dkt. 27), all relevant pleadings, and the applicable law, those motions are DENIED.

Signed at Houston, Texas on June 23, 2011.

_____
Gray H. Miller
United States District Judge